UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS PENSION FUND,
WELFARE FUND, ANNUITY FUND, and
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND,
TRUSTEES OF THE NEW YORK CITY
CARPENTERS RELIEF AND CHARITY FUND,
THE CARPENTER CONTRACTOR ALLIANCE OF
METROPOLITAN NEW YORK, and the NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS,

                        Petitioners,

              – against –

CONCRETE INDUSTRIES ONE CORP.,

                        Respondent.

**OPINION & ORDER**

21 Civ. 7873 (ER)

Ramos, D.J.:

Petitioners, Trustees of the New York District Council of Carpenters Pension Fund,

Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and

Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the Carpenter

Contractor Alliance of Metropolitan New York (the "Funds"), and the New York City District

Council of Carpenters (the "Union", together with the Funds, "Petitioners") petition the Court to

confirm an arbitration award against Concrete Industries One Corp. ("Respondent").  Doc. 1.

For the reasons set forth below, the Petitioners' motion is granted.

### I.   Factual Background

Petitioners Trustees of the New York City District Council of Carpenters Pension,

Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds

(the "ERISA Funds") are employer and employee trustees of multiemployer labor-management

trust funds organized and operated in accordance with the Employee Retirement Income Security

Act ("ERISA").  *Id.* at ¶ 4.  The Trustees are fiduciaries of the ERISA Funds within the meaning

of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  *Id.*

Petitioners Trustees of the New York City District Council of Carpenters Relief and

Charity Fund (the "Charity Fund") (together with the ERISA Funds, the "Funds") are Trustees of

a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26

U.S.C. § 501(c)(3).  *Id.* at ¶ 5.  Petitioner Union is a labor organization that represents employees

in an industry affecting commerce within the meaning of section 501 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 142, and is the certified bargaining representative for

certain employees of the Respondent.  *Id.* at ¶ 6.  Petitioner Carpenter Contractor Alliance of

Metropolitan New York is a New York not for profit corporation.  *Id.* at ¶ 7.

Respondent is a corporation incorporated under the laws of the State of New York.  *Id.* at

¶ 8.  At relevant times, Respondent was an employer within the meaning of section 3(5) of

ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the

meaning of section 501 of the LMRA, 29 U.S.C. § 142.  *Id.*

### a.  The Collective Bargaining Agreement

In March 2013, Respondent entered into an Independent Building Construction

Agreement with the Union covering the period July 1, 2001 through June 30, 2006 (the "2001-

2006 CBA").  *Id.* at ¶ 9.  The 2001-2006 CBA contained a clause stating ". . . this Agreement

shall continue until June 30, 2006 and shall be renewed automatically for one year intervals

thereafter unless notice to the other at their last known address has been provided by either party

by certified and regular mail no more than ninety (90) days nor no less than sixty (60) days before the contract expiration that such party seeks to negotiate . . . or modify or amend this Agreement through negotiations." *Id.* at ¶ 10.  According to Petitioners, neither Respondent nor the Union provided such notice to terminate or negotiate.  *Id.* at ¶ 11.

Respondent also executed an Interim Compliance Agreement, effective July 1, 2011 (the "Interim Agreement").  *Id.* at ¶ 12.  The Interim Agreement stated in part that "the [Agreement set to expire on June 30, 2011] shall remain in force and effective until the Union negotiates the successor Agreement with the Association . . . [Respondent] shall execute successor agreement(s) within five (5) days of the . . . Union's request.  However, [Respondent] shall be bound to the terms contained in the New Agreement(s) retroactive to July 1, 2011, by virtue of executing this agreement, regardless of whether it actually executes a successor agreement." *Id.* at ¶ 13.

The Union adopted successor agreements covering the periods July 1, 2011 through June 30, 2015 (the "2011-2015 CBA") and July 1, 2017 through June 30, 2024 (the "2017-2024 CBA," together with the 2001-2006 CBA and the 2011-2015 CBA, the "CBAs").  *Id.* at ¶ 14. Respondent also executed an Administration Form, further effectuating its agreement with the Union.  *Id.* at ¶ 15.

The CBAs require Respondent to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union.  *Id.* at ¶ 17.  The CBAs also require Respondent to submit to an audit by the Funds to determine whether Respondent remitted the necessary contributions to the Funds.  *Id.* at ¶ 18.  The CBAs bind employers to the policies, rules, and regulations adopted by the Funds.  *Id.* at ¶ 19.  The Trustees

3

of the Funds also established a Revised Statement of Policy for Collection of Employer

Contributions (the "Collection Policy").  *Id.* at ¶ 20.

The CBAs provide that "[s]hould any dispute or disagreement arise between the parties

hereto, or between the Union and any signatory Employer-member, concerning any claim arising

from payments to the Fund of principal and/or interest which is allegedly due, either party may

seek arbitration of the dispute before the impartial arbitrator designated hereunder."  *Id.* at ¶ 21.

The CBAs also provide "[i]n the event that proceedings are instituted before an arbitrator . . . to

collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award

in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated

damages, and/or costs as may be applicable under this Agreement and Declaration of Trust

establishing such Fund."  *Id.* at ¶ 22.

The CBAs and Collection Policy provide that, should the Funds be required to arbitrate a

dispute or file a lawsuit over unpaid contributions, the Funds shall be entitled to collect, in

addition to the delinquent contributions:  (1) interest on the unpaid contributions at the prime rate

of Citibank plus 2%; (2) an amount equal to the greater of interest on the unpaid contributions or

liquidated damages in the amount of twenty (20%) of the unpaid contributions; and (3)

reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies.  *Id.* at

¶ 23.

### b.  The Arbitration Award

Pursuant to the CBAs, the Funds conducted an audit of Respondent's books and records

covering December 30, 2015 through June 25, 2019 (the "Audit") which revealed that

4

Respondent failed to remit all required contributions to the Funds. *Id.* at ¶ 24.  A dispute arose

when Respondent failed to pay the Audit findings.  *Id.* at ¶ 25.

Pursuant to the CBAs' arbitration clause, Petitioners initiated arbitration before the

designated arbitrator, Roger E. Maher.  *Id.* at ¶ 26.  The arbitrator held a hearing, and rendered an

award ("Award") on April 17, 2021.  *See* Doc. 1-8.  The arbitrator found that Respondent was in

violation of the CBAs and ordered Respondent to pay the Funds the sum of $193,747.34,

consisting of: (1) the principal deficiency of $30,932.95; (2) interest of $9,767.48; (3) liquidated

damages of $9,835.17; (4) promotional fund contributions of $195.25; (5) post audit principal

deficiency of $106,037.78; (6) interest thereon of $7,723.25; (7) post audit promotional fund

contributions of $455.40; (8) post audit liquidated damages of $21,207.56; (9) previously

incurred attorney and arbitrator fees of $2,000; (10) court costs of $400; (11) attorney's fees of

$1,500; (12) arbitrator's fee of $1,000; and (13) audit costs of $2,692.50.  Doc. 1 at ¶ 28.  The

arbitrator also found that interest of 5.25% will accrue on the aggregate amount of the Award

from the date of the issuance of the Award.  *Id.* at ¶ 29.  The Award has not been vacated or

modified and no application for such relief is currently pending.  *Id.* at ¶ 30.  Petitioners also

request attorneys' fees and costs expended in this matter pursuant to Art. XV, Sec. 6 of the

CBAs.  *Id.* at ¶ 32.

On September 21, 2021, Petitioners filed the instant petition to confirm the arbitration

award.  Doc. 1.  Respondent was served on September 23, 2021.  Doc. 8.  Respondent has not

appeared in this action, and its deadline to do so has expired.  Doc. 9.  Accordingly, the petition

is considered unopposed.

## II.     Legal Standards

Confirmation of an arbitral award normally takes the form of a summary proceeding that

converts a final arbitration award into a judgment of the court.  *D.H. Blair & Co., Inc.*

*v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006).  The court is required to grant the

award "unless the award is vacated, modified, or corrected."  *Id.* (quoting 9 U.S.C. § 9).  An

application for a judicial decree confirming an award receives "streamlined treatment as a

motion, obviating the separate contract action that would usually be necessary to enforce or

tinker with an arbitral award in court."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582

(2008).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently

and avoiding long and expensive litigation," arbitration awards "are subject to very limited

review."  *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d

Cir. 1997) (citation omitted).  It is not necessary that the arbitrator explain the rationale for the

award; the award "should be confirmed if a ground for the arbitrator's decision can be inferred

from the facts of the case."  *D.H. Blair & Co*., 462 F.3d at 110 (citation omitted).  In short, as

long as there is "a barely colorable justification for the outcome reached," a court should enforce

an arbitration award—even if it disagrees with it on the merits.  *Landy Michaels Realty Corp. v.*

*Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)

(citation omitted).

An unanswered petition to confirm an arbitration award is to be treated "as an unopposed

motion for summary judgment."  *D.H. Blair & Co.,* 462 F.3d at 110; *see also Trs. for the Mason*

*Tenders Dist. Council Welfare Fund v. Earth Constr. Corp.*, No. 15 Civ. 3967 (RA), 2016 WL

1064625, at *3 (S.D.N.Y. Mar. 15, 2016) ("A district court should treat an unanswered petition

to confirm or vacate as an unopposed motion for summary judgment and base its judgment on

the record.") (citation omitted).  Summary judgment is appropriate where "the movant shows

that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact

is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-

moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y.

2011) (citation omitted).  A fact is "material" if it might affect the outcome of the litigation under

the governing law.  *Id.*

      Even if a motion for summary judgment is unopposed, courts are required to "review the

motion . . . and determine from what it has before it whether the moving party is entitled to

summary judgment as a matter of law."  *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373

F.3d 241, 246 (2d Cir. 2004) (citation omitted).  "[W]hen a nonmoving party chooses the

perilous path of failing to submit a response to a summary judgment motion, the district court

may not grant the motion without first examining the moving party's submission to determine if

it has met its burden of demonstrating that no material issue of fact remains for trial."  *Amaker v.*

*Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

      If the burden of proof at trial would fall on the movant, that party's "own submissions in

support of the motion must entitle it to judgment as a matter of law."  *Albee Tomato, Inc. v. A.B.*

*Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998).  The Court must "construe the facts in

the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant."  *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011)

(quoting *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004)).

## III.     Discussion

      The Court finds that there is sufficient justification for this award.  *Landy*, 954 F.2d at

797.  The Arbitrator reviewed the CBAs and Petitioners' evidence and found that Respondent

violated the CBAs by failing to contribute the required payments to the Funds.  Doc. 1-8.  "Where, as here, there is no indication that the decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party."  *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012).

The Court also finds that the award as to attorney's fees and costs is appropriate.  Respondent has not appeared in this case and has not attempted to modify or vacate the award.  Courts "have routinely awarded attorney[']s fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court."  *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)) (collecting cases).

Finally, the Court grants post-judgment interest on the award pursuant to 28 U.S.C. § 1961(a).  *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.").

IV.     **Conclusion**

For all these reasons, the petition is granted, and the arbitration award is confirmed.  The Clerk is respectfully directed to enter judgment in favor of Petitioners in the amount of $193,747.34, plus interest from the date of the Award, April 17, 2021, through the date of judgment, with interest to accrue at the annual rate of 5.25%.

Respondent is also ordered to pay Petitioners $765 in attorneys' fees and $77 in costs arising from this petition.  This judgment shall accrue post-judgment interest pursuant to § 1961. The Clerk is further directed to mail a copy to Respondent and to close the case.

It is SO ORDERED.


Dated:   November 1, 2021
         New York, New York

_____

EDGARDO RAMOS, U.S.D.J.